IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-533-FL

| | |
|---|---|
| GARY W. BATCHELOR, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM &<br>RECOMMENDATION** |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-21 & 24). The time for filing any responses or replies has expired, and these motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), these motions have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-21) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-24) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on May 15, 2008, alleging that he became unable to work on December 31, 2006. (Tr. 23). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled

1

during the relevant time period in a decision dated March 24, 2010. *Id.* at 23-35. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on August 9, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-5. Plaintiff filed the instant action on October 4, 2011. (DE-4).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453,

2

1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 31, 2006. (Tr. 26). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) depression/bipolar disorder; 2) substance dependence; 3) degenerative disc disease; and 4) obesity. *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 26, 30. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. *Id.* at 27, 30. Specifically, the ALJ found that:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 40401567(a) and 4160967(a) except that, when under the influence of alcohol and drugs, he cannot maintain concentration to do even simple, routine, repetitive tasks on a regular basis . . .
>
> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) involving no more than simple, routine, repetitive tasks, no production work, no more than occasional interactions with supervisors and co-workers, and no interactions with the general public.

*Id.*

The ALJ then determined that Plaintiff was unable to perform his past relevant work. *Id.* at 28, 33. Likewise, the ALJ found that, so long as Plaintiff continued his substance use, there were no jobs in the national economy that Plaintiff could perform. *Id*. at 29. However, based upon the testimony of a vocational expert ("VE") the ALJ determined that, if Plaintiff stopped his substance abuse, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. at 34. Accordingly, the ALJ determined that Plaintiff was not under a disability from December 31, 2006 through March 24, 2010. *Id.* at 34.

The ALJ's findings were supported by substantial evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are without merit. The undersigned will nonetheless discuss Plaintiff's individual assignments of error.

4

**The ALJ properly evaluated Dr. Olimpo's opinion**

Plaintiff alleges that "[t]he ALJ violated 20 C.F.R. § 404.1527 in failing to set forth good cause for his rejection of . . . [Dr. Julita S. Olimpo's] opinions." (DE-22, pg. 8). It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245, * 8 (W.D.Va. September 5, 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." Id. (internal citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209, * 2 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

When the ALJ does not give the opinion of a treating physician controlling weight, he must

weigh the opinion pursuant to the following non-exclusive list: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship between the physician and the claimant; 3) the supportability of the physician's opinion; 4) the consistency of the opinion with the record; and 5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2)-(6). *See also*, Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5. *See also*, Farrior v. Astrue, 2011 WL 3157173, * 4 (E.D.N.C. June 1, 2011).

In May 2009, Dr. Olimpo checked a space on a social services form indicating that, in her opinion, Plaintiff "[w]ill never be able to return to work." (Tr. 222). Dr. Olimpo did not cite any evidence supporting her opinion, nor did she otherwise explain her opinion. *Id.* With regard to Dr. Olimpo's opinion, the ALJ made the following findings:

> The undersigned has considered the opinion provided by Dr. Julita S. Olimpo at Exhibit 23F but has given this opinion no weight herein. Dr. Olimpo indicated in May 2009 that the claimant would never be able to return to work. However, as noted above, Dr. Olimpo's own treatment notes at Exhibit 21F show the claimant's mental problems have improved dramatically since he stopped using drugs and alcohol. The undersigned also notes that in an earlier statement dated February 6, 2009 Dr. Olimpo did not state that the claimant was incapable but instead indicated only that the claimant's impairments made it difficult for him to relate and handle job situations (Exhibit 23F).
>
> The undersigned also again notes that the claimant is able to perform a wide range of daily activities despite his depression/bipolar disorder. He does household chores, cooks, takes care of a dog, and grocery shops. He is also able to maintain social functioning with only minimal problems. In fact, Dr. Olimpo even noted in August 2009 that the claimant was able to relate well with the examiner during his mental status examination. The claimant also

6

> visits with his sister and goes to church occasionally. The undersigned notes that the claimant is able to maintain attention and concentration well enough to shop, visit with family, draw, watch television, and do Sudoko puzzles and other games.

(Tr. 33).

These findings were supported by substantial evidence. Dr. Olimpo consistently stated that Plaintiff's symptoms were "improved" and that he was doing "well." *Id.* at 662-680. During examinations, Plaintiff was generally alert, pleasant and cooperative, *Id*. His responses were clear and relevant and he related well with the examiner. *Id.* In a February 2009 treatment note, Dr. Olimpo stated:

> [Plaintiff] is being seen at the Center for Depression and Substance Abuse which, [sic] has been beneficial as he has been in sobriety for a year now. He has a long history of mental illness and carries a diagnosis of Bipolar Disorder. His condition handicaps him from relating [to] other people including co-workers and this problem makes it difficult for him to handle job situations.

*Id*. at 687-688.

On February 17, 2009 it was noted that Plaintiff's "current medication was working well." *Id.* at 675. Plaintiff was "doing well on his current medications" on July 16, 2009, and his depression and anxiety had decreased. *Id.* at 666.

During his testimony, Plaintiff noted that he, *inter alia*: 1) walked outside; 2) went grocery shopping with his father; 3) cooked; 4) washed dishes; and 5) occasionally went to church. *Id.* at 54-57.

In his decision, the ALJ fully explained his reasoning in weighing the medical evidence. These reasons were supported by substantial evidence and, therefore, this assignment of error is without merit.

**The ALJ's failure to specifically discuss a NCDHHS decision was harmless error**

North Carolina Department of Health and Human Services ("NCDHHS") conducted a hearing to determine whether Plaintiff met "the Supplemental Security Income Standards found at 20 CFR 416 in order to be eligible for Aid to the Disabled-Medical Assistance." (Tr. 224). On May 26, 2009, NCDHHS issued a notice of decision indicating that Plaintiff met the disability requirements of 20 CFR 416.920. *Id.* Defendant concedes that the ALJ failed to specifically mention the NCDHHS decision. (DE-25, pg. 16). Plaintiff argues that this error merits remand.

Social Security Ruling 06-03p states:

> Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (see also SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.
>
> SSR 06-03-p; 2006 WL 2329939, *6-7.

This Court has consistently ordered remand when the ALJ fails to consider a "second agency" decision. *See*, Taylor v. Astrue, 2011 WL 2669290, (E.D.N.C. July 7, 2011); Alexander v. Astrue, 2010 WL 4668312 (E.D.N.C. Nov. 5, 2010); Walton v. Astrue, 2010 WL 2772498 (E.D.N.C. July 9, 2010); Watson v. Astrue, 2009 WL 2423967 (E.D.N.C. Aug. 6., 2009); and Bridgeman v. Astrue, 2008 WL 1803619 (E.D.N.C. April 21, 2008).

Defendant, citing Shinseki v. Sanders, 129 S.Ct. 1696 (2009), argues that these cases have been "wrongly decided . . . [because] [t]hey are inconsistent with the basic principles of harmless error analysis set forth by the Supreme Court . . ." (DE-25, pg. 25). In Shinseki, the Supreme

8

Case 5:11-cv-00533-FL   Document 26   Filed 07/20/12   Page 8 of 12

Court held that statutory language requiring that the Veterans Court take "due account of the rule of prejudicial error" in adjudicating claims for veterans' benefits dictated that the court apply the harmless error rule applicable in ordinary civil cases. Shinseki, 129 S.Ct. at 1704. The Supreme Court concluded that the framework employed by the Court of Appeals for the Federal Circuit, which shifted the burden to show an error was harmless onto the administrator, was inconsistent with that statutory language. Id. at 1708.

In Taylor, this Court noted that it was unclear whether the holding in Shinseki extended to Social Security cases. Taylor, 2011 WL 2669290, * 5.[1] After Taylor was decided, however, the Fourth Circuit, in an unpublished opinion, applied the Shinseki harmless error standard in a Social Security case. Garner v. Astrue, 2011 WL 2451723, *1, fn* (4th Cir. 2011)(unpublished opinion). Notably, though, the error in Garner was described as a mere "drafting error." Id. Specifically, in Garner the ALJ failed to specifically list a plaintiff's severe impairments at step two of the sequential analysis. Id. However, the ALJ's later discussion "made it clear" that the plaintiff's impairments had been considered, and, therefore, the error was deemed harmless.

Notably, neither Shinseki nor Garner specifically discuss harmless error as applied to SSR 06-03-p, which states that "evidence of a disability decision by another governmental or nongovernmental agency **cannot be ignored and must be considered.**" SSR 06-03-p; 2006 WL 2329939, *6-7(emphasis added). Nonetheless, in light of Garner, the undersigned will now determine whether the ALJ's failure to discuss the NCDHHS Medicaid decision was harmless error. In Shinseki, the Supreme Court stated:

> We have previously warned against courts' determining whether an error is harmless through the use of mandatory presumptions and rigid rules rather

---

[1] Both Taylor and Alexander, nonetheless, conducted a harmless error analysis and held that the error before the Court was not harmless. Taylor, 2011 WL 2669290, * 5

> than case-specific application of judgment, based upon examination of the record. See *Kotteakos v. United States,* 328 U.S. 750, 760, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The federal "harmless-error" statute, now codified at 28 U.S.C. § 2111, tells courts to review cases for errors of law "without regard to errors" that do not affect the parties' "substantial rights." That language seeks to prevent appellate courts from becoming " ' impregnable citadels of technicality,' " *Kotteakos,* 328 U.S., at 759, 66 S.Ct. 1239. And we have read it as expressing a congressional preference for determining "harmless error" without the use of presumptions insofar as those presumptions may lead courts to find an error harmful, when, in fact, in the particular case before the court, it is not. See *id.,* at 760, 66 S.Ct. 1239; *O'Neal v. McAninch,* 513 U.S. 432, 436–437, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995); see also R. Traynor, The Riddle of Harmless Error 26 (1970) (hereinafter Traynor) (reviewing court normally should "determine whether the error affected the judgment ... without benefit of such aids as presumptions ... that expedite fact-finding at the trial ").
>
> Shinseki, 129 S.Ct. at 1705.

Thus, the undersigned must determine whether the ALJ's failure to discuss the NCDHHS Medicaid decision affected Plaintiff's substantial rights. *Id.* The burden of establishing this is upon Plaintiff. *Id.* In that regard, Plaintiff did not specifically analyze the harmless error issue in his initial motion, nor did he respond in any way after the issue was raised in Defendant's cross motion. Rather, Plaintiff relies upon, *inter alia*, Alexander, Walton, Watson, and Bridgeman, (DE-22, pg. 7-8), cases now called into question in light of Shinseki and Garner. Moreover, Defendant argues that the ALJ's statement that he "considered opinion evidence in accordance with the requirements of . . . 06-3p" (Tr. 31) is sufficient to meet the requirements of that regulation. (DE-25, pg. 16). At least one other District Court in the Fourth Circuit has agreed with this argument. Smith v. Commissioner of Social Security, 2010 WL 1640271 (E.D.Va. April 22, 2010). In Smith, it was noted that:

> While Ruling 06–3p certainly encourages ALJs to evaluate each opinion in the record, regardless of its source, the ruling is not written in the imperative form. See Ruling 06–3p (noting that "the adjudicator generally should explain the weight given to opinions from ... 'other sources' ") (emphasis

10

> added). Additionally, to read Ruling 06–3p as requiring an ALJ to discuss every opinion in the record would be to ignore the plain language of the federal regulations, which state only that an ALJ " may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d) (emphasis added). Indeed, such a reading of Ruling 06–3p would serve to eliminate, in significant part, the regulatory distinction between acceptable medical sources and other sources. See id. § 404.1513(a), (d). Finally, the ALJ explicitly stated in his decision that he had "considered opinion evidence in accordance with the requirements of ... Social Security Rulings 96–2p, 96–5p, 96–6p, and 06–3p." R. at 24. That a particular treatment record was not discussed by the ALJ does not show that this statement is false.
>
> *Id.* at * 4 (emphasis and footnote in original omitted).

Furthermore, Defendant correctly notes that NCDHHS "does not identify any medical or non-medical evidence supporting . . . [its] finding, nor does the determination otherwise provide any explanation supporting that finding." (DE-25, pg. 19). *See also*, (Tr. 224). In light of these factors, the undersigned finds that Plaintiff has not demonstrated that he was harmed by the ALJ's failure to specifically discuss the NCDHHS determination. Accordingly, this assignment of error is without merit.

11

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-21) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-24) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Friday, July 20, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE